IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALEDA NEAL,                                08-CV-92-BR

          Plaintiff,                        OPINION AND ORDER

v.

KRAFT FOODS GLOBAL, INC.,

          Defendant.

**KEVIN KEANEY**
700 NE Multnomah Street
Suite 1155
Portland, OR 97232
(503) 232-9280

          Attorney for Plaintiff

**CALVIN L. KEITH**
**RENEE E. STARR**
Perkins Coie LLP
1120 N.W. Couch Street
Tenth Floor
Portland, OR 97209-4128
(503) 727-2000

          Attorneys for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion (#17) for Summary Judgment and Plaintiff's Motion (#26) for Leave to File Amended Complaint.  For the reasons that follow, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

In 1986 Plaintiff Valeda Neal began working at Defendant Kraft Foods Global, Inc.'s bakery in Portland, Oregon.  Plaintiff has held the position of Baker-Processor.

As a Baker-Processor, Plaintiff is responsible for operating one or two processing lines of cookies and crackers from the time the dough comes from the mixing department until the formed cookies and crackers reach the oven.  Plaintiff must monitor the machines, add flour or other ingredients, clean the machines, clear any dough jams that occur on the machines, and weigh the dough.  She also must empty pans of product that drop on the floor, spray water under the machines to prevent sticking, clean and adjust the scrapers on the machines, sweep and shovel dough from the floor, wipe down the machines, blow under the machines using an air hose, fill up salt cans and flour bins, and push out bins of scrap dough called "hog feeders."  The Baker-Processor job description lists a number of physical demands, including

climbing, kneeling, crouching, reaching, standing, walking, pushing, pulling, and lifting.  Plaintiff also must walk 30-40 feet between the machines throughout her shift.

In February 1994, Plaintiff had back surgery.  On November 21, 1994, Plaintiff returned to work with a medical restriction prohibiting her from "work[ing] overtime until further notice."  Plaintiff and Defendant interpreted the November 1994 restriction as limiting Plaintiff to working eight hours in a day, but it did not restrict her to working only five days per week.  After she returned to work, Plaintiff worked only eight hours per day, but she sometimes worked six or seven days a week.  Plaintiff acknowledges she was able to perform all of the duties of her job without any restriction other than the eight-hour per day limit.

On August 19, 1999, an individual from Defendant's Human Resources Department (HR) noted Plaintiff's November 1994 restriction to work only eight hours per day until "further notice."

On October 27, 2004, Clark Nelson, Defendant's HR Manager, sent Plaintiff a letter noting a review of Defendant's files indicated Plaintiff had a work restriction from 1994 that limited her from working overtime.  Nelson requested Plaintiff submit by December 10, 2004, an "updated statement from [Plaintiff's] physician [that] must be specific, stating the reason and

3 - OPINION AND ORDER

anticipated length of the restriction."

On December 15, 2004, Matthew Gambee, M.D., provided a release for Plaintiff in which he noted the following restriction:  "[K]eep current restrictions that are enforced." He also noted Plaintiff was "under care for treatment of: sciatica."  It is not clear from the record whether Defendant received this release.

On April 28, 2005, Nelson sent Plaintiff a letter informing her that Defendant had scheduled an independent medical examination (IME) for her with William Carr, M.D., on May 20, 2005, "in connection with [Plaintiff's] restriction to work only eight hours per day."  Plaintiff attended the IME, but Dr. Carr was not able to get Plaintiff's past medical records before the examination.

On July 22, 2005, John R. Rastall, M.D., Plaintiff's treating physician, provided an updated medical restriction for Plaintiff "not to work overtime for clean-up."

On September 12, 2005, Dr. Rastall provided the following "physical restrictions" for Plaintiff:  "weight limit restriction - 25 pounds maximum; no kneeling, crawling, climbing; no prolonged bending in awkward positions."

On October 30, 2006, Clark Nelson, Defendant's HR Manager, sent Plaintiff a letter in which he referenced Defendant's October 27, 2004, letter to Plaintiff requesting that she "update

4 - OPINION AND ORDER

[her] work restrictions by December 10, 2004." Nelson stated

Defendant was informed by Plaintiff's doctor that she had

restrictions in lifting more than 25 pounds, kneeling, crawling,

climbing, and bending in awkward positions. Nelson noted:

> It has become apparent that you believe an hour
> restriction should be accommodated that was
> presented to the company prior to October 27,
> 2004. In an effort to resolve this issue the
> company is requesting an updated work restriction
> list by December 1, 2006. The updated statement
> from your physicians must be specific, stating the
> reason and anticipated length of the restriction.

Decl. of Renee Starr, Ex. 11.

On November 8, 2006, Dr. Rastall responded to Defendant's

October 30, 2006, request for information as follows:

> [Plaintiff] is restricted to working no more than
> 8 hrs. in a 24 hr. period. Other limitations
> include a 25 lb. maximum weight limit restriction,
> no kneeling, crawling or climbing and no prolonged
> bending in awkward positions because of a work
> related lower back condition.

Starr Decl., Ex. 6.

On December 5, 2006, Defendant's HR Department sent

Plaintiff a memorandum noting her restrictions of "working no

more than 8 hrs in a 24 hr period"; lifting no more than 25

pounds; and no kneeling, crawling, climbing, or prolonged bending

in awkward positions. Defendant advised Plaintiff that

Defendant needed more information from her doctor in order to

accommodate her restrictions. Accordingly, Defendant furnished

Plaintiff with a Certification of Health Care Provider form that

requested information such as the "specific reason for the restriction and the period of time the accommodation will be needed," a description of Plaintiff's job, and a "HIPPA Authorization" form.

On that same day, Joan Hornburg, HR Specialist, called Plaintiff and left a message informing her that she should not report to work that evening and that Defendant would not "allow her to work until she had a full release to work all hours needed and to contact Clark [Nelson] with questions."

At some point Defendant scheduled Plaintiff for a second IME with Dr. Carr on February 27, 2007, and informed Plaintiff of the appointment by letter.

On May 9, 2007, Nelson sent Plaintiff a letter advising her that Dr. Carr had released her with a restriction of "no lifting, pulling, or pushing greater than 25 lbs" based on the results of her IME on February 28, 2007. Nelson noted Defendant's opinion that the restriction did not prevent Plaintiff from performing her tasks as a Bakeshop Processor. Thus, Nelson informed Plaintiff that she was released to return to work "full duty" as of May 14, 2007, and that she had the option (1) to return to work with the 25-pound restriction or (2) to dispute Defendant's conclusion and have an IME completed "by a doctor of [her] choice," which would result in Plaintiff being placed on an unpaid leave of absence effective May 14, 2007. Finally, Nelson

advised Plaintiff that she had the option to apply for short-term disability through Defendant's provider.

Plaintiff did not have an IME with a doctor of her choice and has been on an unpaid leave of absence from her employment since December 5, 2006.  Plaintiff testified at deposition that she did not apply for short-term disability because she "was not off [work] . . . because [she] was disabled . . . [and she] was able to do [her] work."

On December 24, 2007, Plaintiff filed a complaint in Multnomah County Circuit Court in which she alleged she is disabled, but "physically capable of performing all duties required in her employment provided she is accorded reasonable accommodation."  Compl. at ¶ 3.  Plaintiff further alleged

> [s]ince 1994, in accordance with restrictions imposed by plaintiff's personal physician for a low back condition, defendant provided reasonable accommodations to plaintiff in compliance with law to enable plaintiff to continue to work and be gainfully employed.  Specifically, defendant honored an overtime restriction imposed allowing plaintiff to continue to work on a regular basis.

Compl. at ¶ 4.  Finally, Plaintiff alleges Defendant withdrew "the foregoing reasonable accommodation" in violation of Oregon Revised Statute § 659A.112.

On January 22, 2008, Defendant removed the matter to this Court on the basis of diversity jurisdiction.

On August 1, 2008, Defendant filed a Motion for Summary Judgment.  On August 14, 2008, Plaintiff filed a Motion for Leave

7 - OPINION AND ORDER

to File Amended Complaint to add a claim for punitive damages.

On January 30, 2009, the Court held oral argument on the parties' Motions.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#17)

### Standards

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v.*

8 - OPINION AND ORDER

*Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## **Discussion**

Plaintiff asserts Defendant failed to accommodate her disability in violation of Oregon Revised Statute § 659A.112, which provides in pertinent part:

> (1) It is an unlawful employment practice for any employer to . . . discriminate in . . . terms, conditions or privileges of employment because an otherwise qualified person is a person with a disability.
>
> (2) An employer violates subsection (1) of this

9 - OPINION AND ORDER

section if the employer does any of the
following:

\* \* \*

(e)  The employer does not make reasonable
accommodation to the known physical or
mental limitations of an otherwise
qualified person with a disability who
is [an] . . . employee, unless the
employer can demonstrate that the
accommodation would impose an undue
hardship on the operation of the
business of the employer.

Defendant asserts Plaintiff is not disabled under the
meaning of Oregon Revised Statutes § 659A.100, *et seq.,* and,
therefore, Defendant did not have a duty to accommodate her
impairment.  Defendant also asserts Plaintiff failed to engage in
the interactive process.

**I.  A genuine issue of material fact exists as to whether
Plaintiff is disabled within the meaning of Oregon Revised
Statutes § 659A.100, *et seq*.**

Although Plaintiff alleged in her Complaint that Defendant's
accommodation of an eight-hour work day allowed Plaintiff to
continue to work, she asserted at oral argument that she did not
intend to allege in her Complaint that she was limited in the
major life activity of working, but rather that she was limited
in the major life activities of sitting, standing, and walking.
The Court, therefore, addresses Plaintiff's alleged limitations
in sitting, standing, and walking.

**A.  Oregon Disability Law.**

10 - OPINION AND ORDER

Oregon Revised Statute § 659A.100(1)(c) defines a person with a disability in pertinent part as "an individual who has a physical or mental impairment that substantially limits one or more major life activities." Section 659A.100(d)(A) and (B) define "substantially limits" to mean:

> (A) The impairment renders the individual unable to perform a major life activity that the average person in the general population can perform; or
>
> (B) The impairment significantly restricts the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.

The court must consider measures that mitigate an impairment when determining whether an impairment constitutes a disability under § 659A.100. *Washburn v. Columbia Forest Prods., Inc.*, 340 Or. 469, 479 (2006). To determine whether an individual is substantially limited under Oregon law, the court must consider

> (a) The nature and severity of the impairment;
>
> (b) The length of time an impairment persists or is expected to persist; and
>
> (c) The permanent or expected long-term effect resulting from the impairment.

Or. Admin. R. 839-006-0212.

Oregon Revised Statute § 659A.139 requires the Court "to the extent possible" to construe some portions of Oregon's disability law consistently with the Americans with Disabilities

11 - OPINION AND ORDER

Act (ADA), 42 U.S.C. § 12110, *et seq.* *Washburn,* 340 Or. at 474.

Nevertheless, § 659A.100, which provides the definitions of the

terms "person with a disability" and "substantially limits,"

> is not subject to the 'lockstep' statute
> because it is not within the range of statues
> that the legislature identified in ORS
> 659A.139 that are to be construed, to the
> extent possible, in a manner consistent with
> federal constructions of parallel provisions.

*Id.* Courts, however, may look to federal law for guidance as to

the issues of disability and substantial limitations of major

life functions because the federal definitions of these terms are

quite similar to the definitions under Oregon law.

**B.    Plaintiff's limitation in sitting, standing, and walking.**

Plaintiff asserts she is limited in the major life

activities of sitting, standing, and walking.  It is undisputed

that sitting, standing, and walking are major life activities

under Oregon law.  *See* Or. Admin. R. 839-006-0205(6)(a)("Examples

of specific major life activities include, but are not limited

to, walking, sitting, standing.").  Nevertheless, "[m]erely

having an impairment does not make one disabled. . . .  Claimants

also need to demonstrate that the impairment limits a major life

activity." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534

U.S. 184, 195 (2002)(citing 42 U.S.C. § 12102(2)(A)).[1]    When an

_____

[1] *Toyota* has been superseded by the ADA Amendments Act of
2008 (ADA-AA), Pub. L. No. 110-325 (2008).  Because those
amendments are not retroactive, however, the Court applies the

12 - OPINION AND ORDER

individual "simply differs from the average person in how she performs a major life activity[, that] is patently insufficient for a substantial limitation." *Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2003)(citing *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999)).  The limitation on the major life activity must be permanent or have a long-term impact; *i.e.*, the permanency of the physical condition that led to the impairment is not sufficient to constitute a disability unless the limitation is also permanent or has a long-term impact. *See id*. at 198 (diagnosis alone does not establish a disability within the meaning of the ADA; the impairment's impact must be long-term).  In addition, the court must consider any corrective or mitigating measures taken by the plaintiff.  *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-84 (1999).

Here Plaintiff relies on her August 1994 Physical Capacities Evaluation in which William Parsons, M.D., opined, among other things, that Plaintiff should never carry more than 25 pounds and was limited to sitting six hours in an eight-hour work day, standing two hours in an eight-hour work day, and walking two hours in an eight-hour work day.  Dr. Parsons opined these limitations are permanent.

The record, however, does not reflect any of Plaintiff's other physicians concluded Plaintiff was limited in

reasoning of *Toyota* to the facts in this case.

13 - OPINION AND ORDER

walking, sitting, or standing.  For example, in December 2004 Dr. Gambee found Plaintiff to be limited only in her ability to work more than eight hours per day.  Similarly, Dr. Rastall found in July 2005 that Plaintiff was limited only in her ability to work overtime for clean-up.  In September 2005, Dr. Rastall found Plaintiff was limited in her ability to lift more than 25 pounds, to kneel, to crawl, to climb, and to bend in awkward positions. In November 2006, Dr. Rastall again found Plaintiff had these limitations.

Plaintiff testified at deposition that she spends "a lot of time on [her] feet walking and standing" while working, and she has to "continually walk, stand, push, pull, bend, lift, kneel, and crouch while [she is] working."  Neal Decl. ¶ 2. Plaintiff further asserts she is "willing and able" to perform all of the physical requirements of her job as long as she performs them only eight hours per day even though she may work more than a 40-hour week.  Thus, Plaintiff's testimony and assertions in her Opposition undermine her contention that she is substantially limited in the major life activities of walking, standing, and sitting within the meaning of § 659A.100.  In addition, Plaintiff testified at her deposition that she "occasionally" needs to use a cane when her back "goes out." Plaintiff states in her Declaration that she now uses a walker in place of a cane when her back "goes out."

As noted, the Oregon Supreme Court has held the court must consider mitigating measures when determining whether an individual is substantially limited.  Here Plaintiff's occasional use of a cane or a walker may have been a sufficient mitigation to allow her to continue to be "willing and able" to perform the functions of her job during the period at issue.

Although it is a close question, on this record the Court concludes a genuine issue of material fact exists as to whether Plaintiff was substantially limited in the major life activities of walking, sitting, and/or standing in 2007 when Defendant advised Plaintiff she could return to work with a lifting limitation, obtain a new IME, or apply for short-term disability.

**C.    Plaintiff's lifting restriction.**

Plaintiff also appears to assert that she is substantially limited because she can only lift 25 pounds. Plaintiff, however, does not cite any authority to support her assertion that her weight-lifting restriction substantially limits her in the major life activity of lifting.

Defendant cites a number of cases to support its contention that the ability to lift only 25 pounds does not substantially limit an individual in the major life activity of working.  For example, in *Thompson v. Holy Family Hospital*, the Ninth Circuit specifically rejected a 25-pound lifting

restriction as "substantially limiting." 121 F.3d 537, 540 (9th

Cir. 1997).[2]  Several other circuits have reached the same

conclusion.  *See, e.g., Williams v. Channel Master Satellite*

*Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996)(as a matter of law,

a 25-pound lifting limitation "does not constitute a significant

restriction on one's ability to lift, work, or perform any other

major life activity."), *cert. denied*, 520 U.S. 1240 (1997);

*Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1319

(8th Cir. 1996)(a 25-pound lifting restriction did not

substantially limit any major life activities); *Ray v. Glidden*

*Co.*, 85 F.3d 227, 229 (5th Cir. 1996)(the plaintiff was not

substantially impaired based on the fact that he had to avoid

heavy lifting).

The Court finds the reasoning of these cases persuasive

and, accordingly, concludes Plaintiff's inability to lift more

than 25 pounds is not substantially limiting within the meaning

of Oregon's disability law.

In summary, the Court concludes Plaintiff's inability

to lift more than 25 pounds alone does not establish she is

disabled within the meaning of Oregon Revised Statute § 659A.100.

---

[2] As noted, Oregon Revised Statute § 659A.139 requires the
Court "to the extent possible" to construe some portions of
Oregon's disability law consistently with the ADA and provides
courts may look to federal cases that interpret the ADA "for
their instructive value." *Winnett v. City of Portland,* 118 Or.
App. 437, 442 (1993).

The Court, however, concludes a genuine issue of material fact exists as to whether Plaintiff was substantially limited in the major life activities of walking, sitting, and/or standing in 2007 and, therefore, as to whether Plaintiff was disabled within the meaning of § 659A.100.

## II. Plaintiff failed to engage in the interactive process.

Defendant contends even if Plaintiff is disabled within the meaning of Oregon's disability statutes, Defendant did not have a duty to reasonably accommodate Plaintiff because Plaintiff did not fully engage in the interactive process. Specifically, Defendant contends it made multiple attempts to ascertain the nature of Plaintiff's alleged disability and to understand the basis of her requested eight-hour work day accommodation, but Plaintiff did not provide Defendant with any medical evidence that established the impact of Plaintiff's medical condition on the performance of her specific job duties. In addition, even though Defendant advised Plaintiff that she could obtain an IME with a doctor of her choosing if she disagreed with Dr. Carr's opinion that Plaintiff's medical condition did not preclude her from working more than eight hours per day, Plaintiff did not do so.

Oregon Administrative Rules 839-006-0206(4) and (5) provide:

> (4) Once an otherwise qualified employee or applicant with a disability has requested reasonable accommodation or otherwise disclosed to the employer a disability that may require

reasonable accommodation, the employer has a duty to initiate a meaningful interactive process with the employee or applicant to determine whether reasonable accommodation would allow the employee or applicant to perform the essential functions of a position held or sought.

(5) A meaningful interactive process is an informal process between an otherwise qualified employee or applicant with a disability and an employer in an effort to identify potential reasonable accommodation.

(a) An interactive process between an employee or applicant with a disability and an employer, that readily identifies mutually agreeable reasonable accommodation, is a meaningful interactive process.

(b) When reasonable accommodation is not readily identifiable, a meaningful interactive process identifies the nature of the limitations resulting from the disability, relevant to potential reasonable accommodation that could allow the employee or applicant to perform the essential functions of the job.

In *Stamper v. Salem-Keizer School District*, the plaintiff brought a claim for failure to reasonably accommodate under § 659A.112 based, in part, on the defendant's alleged failure to engage in the interactive process. 195 Or. App. 291, 295 (2004). In deciding the plaintiff's interactive process claim, the court relied on 29 C.F.R. § 1630.2(o)(3), the federal regulation requiring parties to engage in the interactive process and adopted the federal court's analysis of the interactive process requirement. *Id.* at 298-99.

In *Tyle v. Bergelectric Corporation,* the District Court

found

> [o]nce an employer is aware that an employee is
> disabled and in need of accommodations, the
> employer is required to engage in an interactive
> process with the employee aimed at determining
> appropriate reasonable accommodations. *Zivkovic
> v. So. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th
> Cir. 2002).  "The interactive process requires
> communication and good-faith exploration of
> possible accommodations between employers and
> individual employees.  The shared goal is to
> identify an accommodation that allows the employee
> to perform the job effectively.  Both sides must
> communicate directly, exchange essential
> information and neither side can delay or obstruct
> the process." *Barnett v. U.S. Air, Inc.*, 228 F.3d
> 1105, 1114-15 (9th Cir. 2000)(*en banc*), *vacated on
> other grounds by*, *U.S. Airways v. Barnett*, 535
> U.S. 391 (2002).  An employee's failure to
> participate in the interactive process ends the
> employer's obligation to further engage in the
> process.  *Allen v. Pacific Bell*, 348 F.3d 1113,
> 1115 (9th Cir. 2003), and liability to the
> employer cannot arise where the employee's actions
> cause a breakdown in the interactive process.
> *Vawser v. Fred Meyer, Inc.*, 2001 WL 1174084 (9th
> Cir.2001)(citing *Stewart v. Happy Herman's Chesire
> Bridge, Inc.*, 117 F.3d 1278, 1287, 1997 WL 378601
> (11th Cir. 1997)).

Civil No. 07-CV-284-AC, 2008 WL 2677995, at *12 (D. Or. July 2,

2008).  Thus, the employer is only required to provide a disabled

employee with a reasonable accommodation and is not required to

provide the accommodation of the employee's choice.  *Barnett*, 228

F.3d at 1114-15 (citing 29 C.F.R. pt. 1630, app. § 1630.9).

Here Defendant repeatedly requested Plaintiff to provide

information from her doctors that specified why her low-back

condition prohibited her from working more than eight hours per

day.  Although Drs. Gambee and Rastall limited Plaintiff to

19 - OPINION AND ORDER

working eight hours per day due to "sciatica" and a "lower back condition," the doctors did not set out specific reasons why either of those diagnoses prohibited Plaintiff from working more than eight hours per day, and, therefore, those diagnoses were not sufficient for Defendant to assess adequately any reasonable accommodations for Plaintiff's condition. Accordingly, Defendant required Plaintiff to undergo an IME as permitted under the ADA in an attempt to facilitate the accommodation and interactive process. *See* 29 C.F.R. pt. 1630, app. § 1630.14(c)(The ADA "permits employers . . . to make inquiries or require medical examinations necessary to the reasonable accommodation process.").

Although the Court could not find any Oregon cases addressing the issue of an IME in the context of the interactive process, the fact that the Oregon courts have generally applied 29 C.F.R. § 1630.2(o)(3), the federal regulation requiring parties to engage in the interactive process and the associated requirements of the interactive process, the Court concludes Oregon employers are entitled to require medical examinations necessary to the reasonable accommodation process under Oregon law.

After Plaintiff's IME on February 27, 2007, Dr. Carr released Plaintiff with restrictions in lifting, pulling, and pushing more than 25 pounds, but he concluded Plaintiff did not

20 - OPINION AND ORDER

have any restrictions that prohibited her from working more than
eight hours per day.  Defendant informed Plaintiff of the results
of the IME and advised her she could return to work with the 25-
pound restriction or dispute Dr. Carr's conclusion and have an
IME completed "by a doctor of [her] choice."  Plaintiff did not
return to work nor did she undergo an IME by a doctor of her
choice to dispute Dr. Carr's conclusions.  Thus, Plaintiff failed
to participate fully in the interactive process, which ended
Defendant's obligation to further engage in the process.  *See*
*Allen*, 348 F.3d at 1115.  In such circumstances, the Court
concludes Defendant is not liable because the undisputed facts
show Plaintiff's actions caused the breakdown in the interactive
process.

**III. Effect of the ADA Amendments Act of 2008.**

Plaintiff asserts the ADA Amendments Act of 2008 (ADA-AA),
Pub. L. No. 110-325 (2008), "significantly changes the ADA."
According to Plaintiff, the Act "rejects the Supreme Court's
holding [in *Sutton v. United Air Lines*, 527 U.S. 471 (1999)] that
mitigating measures must be considered when evaluating whether an
individual is disabled" and "clarifies the Supreme Court's prior
interpretations of 'substantially limits' [in *Toyota*
*Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002)]
were too restrictive."  Plaintiff asserts because the "lockstep"
provision of § 659A.139 requires Oregon's disability law to be

interpreted consistently with the intent of the ADA, the Court must consider the changes made to the ADA via the ADA-AA.

**A.    The ADA-AA is not retroactive**.

In the text of the ADA-AA, Congress specified its effective date as January 1, 2009.  The Supreme Court has created a presumption against interpreting statutes to require retroactive application unless retroactivity is clearly specified by the text of the act or its legislative history.  *See, e.g.*, *Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994)(when the text of the act and its legislative history did not support applying the Civil Rights Act retroactively, the Court would not do so).  In addition, when a statute is "interpretive" or "restorative" like the ADA-AA, the Supreme Court has held "[t]he usual purpose of a specific interpretive statute is to correct a judicial interpretation of a prior law which the legislature considers inaccurate.  [When] such statutes are given any effect, the effect is prospective only."  *Id*. at 311 n.11 (quotation omitted).  The text of the ADA-AA does not make any mention of retroactivity nor does the legislative history of the ADA-AA suggest an intent of retroactivity.  For example, Representative Hoyer, a sponsor of the ADA-AA, stated "[b]y voting for final passage of the ADA Amendment Act, we ensure that the definition of disability will *henceforth* be construed broadly and fairly." H.R. 3195 § 44 (2008)(emphasis added).

In addition, although the Ninth Circuit has declined to decide whether the ADA-AA applies retroactively (*see Rohr v. Salt Riber Project Agric. Imp. and Power Dist.*, No. 06-16527, 2009 WL 349798, at *1 (9th Cir. Feb. 13, 2009)), other courts have held it does not apply retroactively.  *See, e.g., Kiesewetter v. Caterpillar, Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008); *Burkhart v. Intuit, Inc.*, No. CV-07-675-TUC-CKJ, 2009 WL 528603, at *11 n.4 (D. Ariz. Mar. 2, 2009); *Moran v. Premier Educ. Group, LP*, No. 3:06CV01330(DJS), 2009 WL 507505, at *7 (D. Conn. Feb. 13, 2009); *Rudolph v. U.S. Enrichment Corp., Inc.*, No. 5:08-CV-00046-TBR, 2009 WL 111737, at *6 (W.D. Ky. Jan. 15, 2009); *Supinski v. United Parcel Serv., Inc.*, No. 3:CV-06-0793, 2009 WL 113796, at *5 n.6 (M.D. Pa. Jan. 16, 2009); *Walstrom v. City of Altoona*, No. 3:2006-81, 2008 WL 5411091, at *5 n.3 (W.D. Pa. Dec. 29, 2008); *Hays v. Clark Prods., Inc.*, No. 1:07-CV-328, 2008 WL 5384300, at *6 n.3 (S.D. Ind. Dec. 18, 2008); *Levy ex rel. Levy v. Hustedt Chevrolet*, No. 05-4832(DRH)(MLO), 2008 WL 5273927, at *3 n.2 (E.D.N.Y. Dec. 17, 2008); *Knox v. City of Monroe*, No. 07-606, 2008 WL 5157913, at *5 n.10 (W.D. La. Dec. 9, 2008); *Gibbon v. City of New York*, No. 07-Civ-6698, 2008 WL 5068966, at *5 n.47 (S.D.N.Y. Nov. 25, 2008).

This Court agrees, and, accordingly, the Court concludes the ADA-AA does not apply retroactively.  It follows, therefore, the ADA-AA does not affect the Court's analysis of

Plaintiff's state-law claim in this case.

> **B.    Even if the ADA-AA did apply retroactively, it would not affect Plaintiff's state-law claim.**

Even if the Court concluded the ADA-AA applied retroactively, the Court concludes it would not affect Plaintiff's claim.

Plaintiff brings a state-law claim for failure to accommodate in violation of Oregon Revised Statute § 659A.112. As noted, Oregon law provides the definition of a "person with a disability" in § 695A.100.  As the court recognized in *Washburn v. Columbia Forest Products, Incorporated*, the "lockstep" provision of § 659A.139 applies on its face only to §§ 659A.112-659A.139 and, therefore, does not apply to the definition of disability found in § 659A.100.  197 Or. App. 104, 108 (2005), *rev'd on other grounds by* 340 Or. 469.  Thus, the definition of a person with a disability under Oregon law is not required to be "construed to the extent possible in a manner that is consistent with any similar provision of the federal [ADA]."  Or. Rev. Stat. § 659A.139.

Accordingly, even if the ADA-AA applied retroactively, it would not affect the definition of disability or the definition of "substantially limits" as set out in Oregon Revised Statute § 659A.100.

In summary, although the Court concludes a genuine issue of

24 - OPINION AND ORDER

material fact exists as to whether Plaintiff is a person with a disability, the Court concludes Defendant has conclusively established that Plaintiff failed to engage in the interactive process as required under Oregon law.

Accordingly, the Court grants Defendant's Motion for Summary Judgment.

### PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (#26)

#### Standard

Federal Rule of Civil Procedure 15(a) provides a party may amend a pleading after a responsive pleading has been filed only by leave of court unless the opposing party consents to the amendment.  Rule 15(a), however, also provides leave to amend "shall be freely given when justice so requires."  "This policy is to be applied with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

The Supreme Court has recognized several factors that a district court should consider when determining whether justice requires the court to grant leave to amend.  Those factors include

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment.

25 - OPINION AND ORDER

*Id.* at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### **Discussion**

Plaintiff seeks leave to amend her Complaint to add a claim for punitive damages.  Defendant, in turn, contends Plaintiff has unduly delayed in filing her request, and, in any event, Plaintiff's requested amendment would be futile.

A proposed amendment to a complaint "'is futile only if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim.'"  *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997)(quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).  A plaintiff should be afforded an opportunity to test her claim on the merits rather than on a motion to amend unless it appears beyond doubt that the proposed amended complaint would be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Miller*, 845 F.2d at 214.  *See also DCD Programs*, 833 F.2d at 188.

Because the Court has concluded Plaintiff has not shown there is a jury question as to liability, it follows that it would be futile to allow Plaintiff to amend her Complaint to add a claim for punitive damages.

Accordingly, the Court denies Plaintiff's Motion for Leave to File Amended Complaint.

26 - OPINION AND ORDER

**<u>CONCLUSION</u>**

For these reasons, the Court **GRANTS** Defendant's Motion (#17) for Summary Judgment and **DENIES** Plaintiff's Motion (#26) for Leave to File Amended Complaint.

IT IS SO ORDERED.

DATED this 20th day of March, 2009.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

27 - OPINION AND ORDER